SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
RYAN D. MCCORTNEY, Cal. Bar No. 132194
rmccortney@sheppardmullin.com
MATTHEW M. SONNE, Cal. Bar No. 239110
msonne@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone: 714-513-5100
Facsimile: 714-513-5130

Attorneys for Defendant
TOMMY BAHAMA R&R HOLDINGS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE MADRIGAL, CRISTINA MARTINEZ, and TRACEY MILSOP, MICHAEL JENSEN, AND LAWRENCE PERCIVAL, on Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TOMMY BAHAMA R&R HOLDINGS, INC., a Georgia Corporation; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. CV 09-08924 SJO (MANx)<br><br>The Honorable James S. Otero<br><br>DEFENDANT'S OPPOSITION TO PLAINTIFFS' RULE 23 MOTION FOR CLASS CERTIFICATION<br><br>Date:        March 14, 2011<br>Time:       10:00 a.m.<br>Ctrm:       1 |

W02-WEST:3JOC1\403250916.1                                        OPPOSITION TO MOTION FOR CLASS CERT

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3
4

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...............................1

5

II.   PLAINTIFFS' PROPOSED UNIFORM, MEAL AND REST BREAK CLASSES FAIL TO SATISFY THE RULE 23 REQUIREMENTS ...............2

6
7

A.   Plaintiffs Bear the Burden of Satisfying The Rule 23 Requirements..............................................................................................2

8
9

B.   Plaintiffs' Proposed Uniform Class Fails To Satisfy The "Predominance" Requirement under Rule 23(b)(3)..............................3

10
11

1.   Defendant Does Not Have a Policy Requiring Employees to Purchase Uniforms ...................................................3

12
13

2.   Defendant Does Not Have A Policy That Violates The Law Regarding the Maintenance of Uniforms ............................5

14
15

3.   A Highly Individualized Factual Inquiry Of Each Putative Class Member Would Be Required to Determine any Liability.........................................................................................7

16
17

C.   Plaintiffs' Proposed Meal and Rest Break Class Fails To Satisfy The "Predominance" Requirement under Rule 23(b)(3) .....................11

18

1.   Defendant's Meal Break Policy Complies with the Law...........11

19
20

2.   Plaintiffs' Meal Break Claim Fails to Satisfy the Predominance Requirement........................................................12

21

3.   Defendant's Rest Break Policy Complies with the Law.............14

22
23

4.   Plaintiff's Rest Break Claim Fails to Satisfy the Predominance Requirement........................................................14

24
25

D.   Plaintiffs' Proposed Uniform, Meal And Rest Break Classes Fail To Satisfy The "Superiority" Requirement under Rule 23(b)(3)..........15

26
27

E.   Plaintiffs' Proposed Uniform, Meal And Rest Break Classes Fail To Satisfy The "Typicality" And "Adequacy" Requirements under Rule 23(a)....................................................................................18

28

III.    THE PROPOSED RELEASE SUBCLASS FAILS TO SATISFY THE
        RULE 23 REQUIREMENTS.............................................................................18

IV.     PLAINTIFFS' DERIVATIVE CLAIMS SHOULD NOT BE
        CERTIFIED................................................................................................19

V.      CONCLUSION ...........................................................................................20

W02-WEST:3JOC1\403250916.1

OPPOSITION TO MOTION FOR CLASS CERT

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>FEDERAL CASES</u>

4

*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591 (1997) ........................................................................... 16

5

6

*Brown v. Federal Express Corp.*
   249 F.R.D. 580 (C.D. Cal. 2008)........................................... 13, 14, 15

7

8

*Culinary/Bartenders Trust Fund*
   244 F.3d 1152 (9th Cir. 2001) ........................................................... 16

9

*Drake v. Morgan Stanley*
   No. CV 09-6467, 2010 U.S. Dist. LEXIS 47627 (Apr. 30, 2010) .............. 10, 11

10

11

*Dukes v. Wal-Mart, Inc.*
   509 F.3d 1168 (9th Cir. 2007) ........................................................... 18

12

13

*Gabriella v. Wells Fargo, Inc.*
   No. C 06-4347 SI, 2008 WL 3200190 (N.D. Cal. Aug. 4, 2008) ..................... 14

14

15

*Gen'l Tel. Co. of Southwest v. Falcon*
   457 U.S. 147 (1982) ........................................................................... 2

16

17

*Hanon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992) ....................................................... 2, 3, 18

18

19

*Howard v. Gap, Inc.*
   No. C 06-06773 WHA, 2009 U.S. Dist. LEXIS 105196 (N.D. Cal. Oct. 29, 2009)........................................................................... 7, 8

20

21

*Jasper v. C.R. England, Inc.*
   No. CV 08-5266, 2009 U.S. Dist. LEXIS 34802 (C.D. Cal. 2009) ................... 20

22

23

*Kenny v. Supercuts, Inc.*
   252 F.R.D. 641 (N.D. Cal. 2008) ..................................................... 13

24

25

*Kimoto v. McDonalds Corp.*
   No. CV 06-3032 PSG, 2008 WL 4690536 (C.D. Cal. Aug. 19, 2008)........ 14, 15

26

27

*Kohler v. Hyatt Corp.*
   No. EDCV 07-782-VAP, 2008 U.S. Dist. LEXIS 63392 (C.D. Cal. July 23, 2008)........................................................................... 14

28

*Lanzarone v. Guardsmark, LLC*
   No. CV06-1136, 2006 U.S. Dist. LEXIS 95785 (C.D. Cal. Sept. 7, 2006)...9, 10

*Mendoza v. Home Depot, U.S.A. Inc.*
   No. CV 09-05843, 2010 WL 424679 (C.D. Cal. 2010) .....................................17

*Salazar v. Avis Budget Group, Inc.*
   251 F.R.D. 529 (S.D. Cal. 2008) .......................................................................14

*Spainhower et al. v. U.S. Bancorp, et al.*
   Nos. 2:08-CV-00137, 2:08-CV-00645, 2010 WL 1408105 (C.D. Cal.
   2010)...................................................................................................................20

*Valentino v. Carter-Wallace, Inc.*
   97 F.3d 1227 (9th Cir. 1996) .......................................................................2, 16

*Villacres v. ABM Industries Inc.*
   No. CV 07-5327, 2009 WL 111686 (C.D. Cal. 2009) ......................................20

*Washington v. Joe's Crab Shack*,
   No. C 08-5551, 2010 WL 5396041 (N.D. Cal. Dec. 23, 2010) .......10, 13, 14, 15

*White v. Starbucks Corp.*
   497 F. Supp. 2d 1080 (N.D. Cal. 2007).......................................................12, 14

*Wolin v. Jaguar Land Rover*
   617 F. 3d 1168 (9th Cir. 2010) ..........................................................................11

*Zinser v. Accufix Research Inst.*
   253 F.3d 1180 (9th Cir. 2001) .............................................................................3

STATE CASES

*Amaral v. Cintas Corp.*
   163 Cal. App. 4th 1157, 78 Cal. Rptr. 3d 572 (2008).......................................20

*Gattuso v. Harte-Hanks Shoppers, Inc.*
   42 Cal. 4th 554, 169 P.3d 889 (2007)...............................................................10

*Murphy v. Kenneth Cole Prods., Inc.*
   40 Cal. 4th 1094 (2007).....................................................................................12

*Smith v. Rae-Venter Law Group*
   29 Cal. 4th 345 (2002).......................................................................................20

-iv-

FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

Rule 23 .................................................................................................... 1, 2, 18

Rule 23(a) .............................................................................................. 1, 2, 18

Rule 23(a)(1) .................................................................................................. 18

Rule 23(a)(3) ................................................................................... 3, 9, 18, 19

Rule 23(a)(4) .............................................................................................. 3, 18

Rule 23(b) ......................................................................................................... 3

Rule 23(b)(3) ......................................................... 1, 2, 3, 9, 11, 15, 16, 17, 19

Rule 23(b)(3)(D) ............................................................................................ 18

Rule 30(b)(6) ................................................................................................. 12

STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

California Code of Civil Procedure § 85 ....................................................... 17

California Code of Civil Procedure § 88 ....................................................... 17

California Labor Code § 203 .................................................................... 19, 20

California Labor Code § 226 .................................................................... 19, 20

California Labor Code § 226.7 ...................................................................... 12

California Labor Code § 2802 ....................................................................... 10

Wage Order 5-2001 .................................................................................. 3, 14

Wage Order 7-2001 .................................................................................. 3, 14

OTHER AUTHORITIES

DLSE Enforcement Policies and Interpretations Manual (June 2002), § 45.5.5 ...... 8

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

In their Motion for Class Certification ("Motion"), Plaintiffs seek to certify the following three classes of non-exempt employees in California:  (1) all retail and restaurant employees who were allegedly required to purchase and maintain uniforms; (2) all restaurant employees who were allegedly denied meal and rest breaks; and (3) all restaurant employees who signed Settlement Agreements releasing their claims.  (Motion, pp. 1-2).  Plaintiffs' Motion fails to satisfy the Rule 23 requirements for class certification for the following reasons.

First, Plaintiffs cannot satisfy the "preponderance" requirement under Rule 23(b)(3) because they have failed to establish the existence of any company-wide policy that violates the law with respect to their uniform or meal and rest period claims.  A highly individualized factual inquiry of each putative class member would be required to resolve these claims.  Defendant cites to ample case law herein which confirm that these claims are not suitable for class certification.  Plaintiffs fail to cite to a single case in their moving papers which supports certification of these claims.

Second, Plaintiffs cannot satisfy the "superiority" requirements under Rule 23(b)(3) because there is a realistic alternative to a class action as demonstrated by the fact that 19 employees have filed individual lawsuits in Orange County Superior Court in which they allege nearly identical claims as those in the instant lawsuit. The fact that over 180 employees have signed Settlement Agreements in which they have rejected litigation further demonstrates that there is a realistic alternative to a class action to resolve any claims they may have against Defendant.

Third, Plaintiffs cannot satisfy the "typicality" and "adequacy" requirements under Rule 23(a) for any of their claims because Plaintiffs are seeking to deprive over 180 restaurant employees of the benefits of the Settlement Agreements they signed which creates an irreconcilable conflict of interest.  Furthermore, Plaintiffs

OPPOSITION TO MOTION FOR CLASS CERT

1  are seeking to represent these employees who have expressly stated in their

2  Settlement Agreements that they do not wish to participate in this lawsuit.

3       Finally, Plaintiffs cannot certify a class of employees who signed Settlement

4  Agreements because (1) they cannot satisfy the numerosity requirement because

5  only 7 out of 189 putative class members who signed a Settlement Agreement are

6  now seeking to disavow it, (2) they cannot satisfy the typicality or adequacy

7  requirements for the reasons stated above, and (3) they cannot satisfy the

8  preponderance or superiority requirements because a highly individualized factual

9  inquiry of each putative class member would be required.  As demonstrated below,

10  Plaintiffs' Motion should be denied.

11  **II.  PLAINTIFFS' PROPOSED UNIFORM, MEAL AND REST BREAK CLASSES FAIL TO SATISFY THE RULE 23 REQUIREMENTS**

12      **A.  Plaintiffs Bear the Burden of Satisfying The Rule 23 Requirements**

13       Before certifying a class, the Court must conduct a "rigorous analysis" to

14  determine whether Plaintiffs have met their burden to establish the Rule 23

15  requirements.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

16  At this stage, "the class determination generally involves considerations that are

17  enmeshed in the factual and legal issues comprising the plaintiff's cause of action."

18  *Gen'l Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) (internal quotations

19  omitted).  Thus, the court may consider evidence relating to the merits if that same

20  evidence is also relevant to the determination of whether the Rule 23 requirements

21  have been met.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

22  1992).  Plaintiffs bear the burden of demonstrating that they have met each of the

23  following four requirements of Rule 23(a):

24      (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are

25  typical of the claims or defenses of the class, and (4) the

26  representative parties will fairly and adequately protect the

27  interests of the class.  FRCP 23(b)(3)

28

If these four requirements are satisfied, Plaintiffs must meet at least one of three additional requirements set forth in Rule 23(b).  *Hanon*, 976 F.2d at 508-09; *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires Plaintiffs to demonstrate that questions of law or fact common to the class predominate and that a class action is superior to other methods available for adjudicating the controversy at issue.  *See* FRCP 23(b)(3).  As demonstrated below, Plaintiffs' uniform claim fails to satisfy the "predominance" and "superiority" requirements under Rule 23(b)(3) and the "typicality" and "adequacy" requirements under Rule 23(a)(3) and (4).[1]

### B.   Plaintiffs' Proposed Uniform Class Fails To Satisfy The "Predominance" Requirement under Rule 23(b)(3)

Plaintiffs seek to certify a class of all non-exempt restaurant and retail store employees who were allegedly required to purchase and maintain uniforms as a condition of employment.  (Motion, 2:20-24).  The first requirement for class certification under Rule 23(b)(3) is "that the questions of law or fact common to class members predominate over any questions affecting only individual members."  Plaintiffs have failed to satisfy this requirement for their uniform claims because they have failed to establish the existence of a company-wide policy that violates the law and, therefore, a highly individualized factual inquiry of each putative class member would be required to resolve their uniform claims.

### 1.   Defendant Does Not Have a Policy Requiring Employees to Purchase Uniforms

Section 9(A) of Wage Order 5-2001 (Public Housekeeping Industry) and Wage Order 7-2001 (Mercantile Industry) state:[2]

> "When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term 'uniform' includes wearing apparel and accessories of distinctive design or color."

---

[1] For the sake of brevity, Defendants will address the requirements under Rule 23(b)(3) before they address the requirements under Rule 23(a)(3) and (4).

[2] A copy of Wage Orders 5-2001 and 7-2001 are attached as Exhibits A and B to Defendants' Request for Judicial Notice filed herewith.

1    Plaintiffs assert that Defendant "requires" its employees to purchase Tommy
2  Bahama uniforms at their own expense.  (Motion, 7:10-11).  However, there is no
3  written policy which states that employees are required to purchase Tommy Bahama
4  uniforms at their own expense.  On the contrary, Defendant's written policies state
5  that employees are required to "wear what is considered uniform pieces as
6  distributed at the time of hire and seasonally or quarterly thereafter," that "Tommy
7  Bahama issues uniforms, at no cost," and that uniforms "are discounted 100%."[3]
8  Because there is no written policy requiring employees to purchase Tommy Bahama
9  uniforms at their own expense, Plaintiffs cite to the declarations of putative class
10 members in support of their contention that Tommy Bahama nonetheless had such a
11 policy.  (Motion, 8:15-16).  These declarants all state the following in conclusory
12 fashion:

13        "The number of uniform pieces provided to me was not adequate.  Employees
          are expected to purchase their own uniform items in order to have a variety of
14        outfits to wear and to stay up with the season.  Management does not want the
          employees to be wearing the same outfit everyday and since management
15        does not provide enough pieces to allow for variety I have had to purchase my
          uniform pieces."[4]

16 Aside from the fact that the foregoing paragraph is subject to a variety of evidentiary
17 objections,[5] none of the declarants identify anyone in "management" who
18 "expected" them to "purchase their own uniform items," or who did "not want the
19 employees to be wearing the same outfit every day."  More importantly, no where in
20 the foregoing paragraph does it say that "management" required them to purchase
21 any uniform items at their own expense.  Instead, the declarants state that "since
22 management does not provide enough pieces to allow for variety I have had to

_____

23
24
25 [3]  *See* Wilmer Harris Decl. in support of Plaintiffs' Motion, Ex. B, p. 22 (Dkt. 114-1,
      p. 70); Ex. C, p. 21 (Dkt. 114-1, p. 79); Ex. D, p. 20 (Dkt. 114-1, p. 85); Ex. F, p.
26    3 (Dkt. 114-3, p. 4); Ex. G, p. 2 (Dkt. 114-3, p. 8); Ex. H, p. 2 (Dkt. 114-3, p. 13);
      Ex. L, p. 1 (Dkt. 114-3, p. 28); Ex. O, p. 1 (Dkt. 114-3, p. 42).
27 [4]  *See* declarations of putative class members submitted by Plaintiffs, all of which
      are attached as Exhibit E to the Harris Decl.
28 [5]  *See* Defendant's Objections to Evidence filed herewith.

W02-WEST:3JOC1\403250916.1                                    OPPOSITION TO MOTION FOR CLASS CERT

purchase my uniform pieces."[6]  In contrast to the declarations of putative class members submitted by Plaintiffs which state the foregoing,[7] Defendant has filed herewith 128 declarations from putative class members who state that the uniform they wore to work was provided by Tommy Bahama at no cost to them.[8]

Plaintiffs also misconstrue a single sentence, taken out of context from the restaurant Hospitality Guide, which reads in its entirety:  "Whether an apparel item has been issued to or purchased by the staff member has no bearing on whether or not that item can be worn while working at Tommy Bahama's Tropical Café."  The foregoing sentence does not say or mean, as Plaintiffs contend, that "defendant would not meet all of their employees' need for required uniforms."  (Motion, 8:16-9:2).  Again, as 128 putative class members state in their declarations, the uniform they wore to work was provided by Tommy Bahama at no cost to them.[9]

### 2.    Defendant Does Not Have A Policy That Violates The Law Regarding the Maintenance of Uniforms

Plaintiffs contend that Defendant has a "uniform policy" that requires

---

[6] Plaintiff Michael Jensen testified that he gave away some of his free Tommy Bahama-issued clothing as gifts instead of wearing them at work.  *See* Jensen Depo. 145:25 – 147:15, attached to Decl. Matthew Sonne filed herewith.

[7] The integrity of the declarations of putative class members submitted by Plaintiffs is questionable in light of the experience of putative class member Christopher Falcone.  Mr. Falcone states that even after telling Plaintiffs' counsel that he did not feel comfortable signing a declaration because he had no problems during his employment with Tommy Bahama, they went ahead and sent him a two-page declaration anyway.  He declared that he believed Plaintiffs' attorneys' conduct in this case has been inappropriate, and he does not want them to contact him again.  *See* Declaration of Christopher Falcone filed herewith.

[8] *See* ¶¶ 3-7 of the declarations of putative class members submitted by Defendant which are indexed in alphabetical order and filed herewith under separate cover.

[9] Defendant's statistical expert Mr. Crandall methodically dismantles and then eviscerates Plaintiffs' expert Mr. Lepowsky's survey in his report filed concurrently herewith.  Mr. Crandall's report reveals the survey's results-oriented construction, imprecise questions, and low response rate.  Mr. Lepowsky's own notes reveal that he tried "to limit [the survey] to yes/no questions **to establish liability**."  *See* Sonne Dec. ¶ 16 and Exhibit O.  He then selectively analyzed the survey responses, applied faulty confidence intervals, and manipulated the results to fit predetermined conclusions  Simply put, the defects in Mr. Lepowsky's survey and accompanying analysis run deep, and his manufactured conclusions are entitled to no weight.

W02-WEST:3JOC1\403250916.1                                    OPPOSITION TO MOTION FOR CLASS CERT

1  employees to maintain "Tommy Bahama uniforms at their own expense and without

2  providing them with a uniform weekly maintenance allowance of an hour's pay at

3  the state minimum wage." (Motion, 7:10-12). Plaintiffs further contend that

4  Defendant's policy requires employees to "dry clean" their uniforms based on the

5  following:

6      "Employees are responsible for maintaining uniform clothing in clean
       condition and good repair. Garments with holes, patches, fraying, dirt, stains,
7      wrinkles, and/or faded from their original condition/color are not acceptable."

8      "Furthermore, regardless of job position, it is expected that all members of the
       management team and staff will demonstrate good hygiene and their uniforms
9      will be clean, pressed, and in good repair, to include shoes that will also be
       clean and polished, in good repair and have non-slip shoes." (Motion, 7:1-9)
10

11 However, no where in either of the above paragraphs does it say that employees are

   required to dry clean their uniform. Moreover, the DLSE has stated:
12
13     "Employees can be asked to maintain employer-furnished uniforms which
       require minimal time for care, e.g., uniforms made of a material requiring
14     only washing and tumble or drip drying." (*See* Plaintiffs' Request for Judicial
       Notice, Ex. A 6, § 5(a), (Dkt. 114-10, p. 6).

15     Defendant has submitted numerous declarations from putative class members

16 stating that the clothing they wear to work is machine washable.[10] Since Defendant

17 began providing a free dry-cleaning service to employees in California, few

18 employees have used this service because the uniforms they wear to work do not

19 require dry-cleaning.[11] Plaintiffs' "fashion expert" Gabriele Goldaper's own

20 underlying data belies her conclusions that Tommy Bahama silk clothing must be

21 ironed or dry cleaned to be appropriately worn. Indeed, of the 195 printouts of

22 clothing items that Ms. Goldaper reviewed from the Tommy Bahama website, 167

23 of 195 garments -- or 86% -- were clearly labeled "machine washable." Of the 195

24 total garments, 48 were labeled as 100% silk, and 147 garments were not. Of the 48

25 garments that were labeled 100% silk, 35 -- or 73% -- were clearly labeled "machine

26

27 [10] *See* ¶¶ 3-7 of the declarations of putative class members submitted by
       Defendants.

28 [11] *Id.*; *See* Declaration of Michael Shimer, ¶ 6, filed herewith.

OPPOSITION TO MOTION FOR CLASS CERT

washable."[12]   Contrary to Plaintiffs' and their expert's argument, most of Tommy Bahama's silk garments are machine-washable and maintain an appropriate appearance after being tumble-dried or hanged-to-dry.[13]

### 3.   A Highly Individualized Factual Inquiry Of Each Putative Class Member Would Be Required to Determine any Liability

Plaintiffs' uniform claim is precisely the type of claim that Courts have found unsuitable for class certification because it is not subject to a common class-wide method of proof.  In *Howard v. Gap, Inc.,* No. C 06-06773 WHA, 2009 U.S. Dist. LEXIS 105196 (N.D. Cal. Oct. 29, 2009), which was decided in the Northern District of California, the plaintiff sought to certify a class of New York Gap employees and alleged that Gap's dress policy violated New York law.  The plaintiff alleged she was verbally told when hired that she had to purchase Gap clothes and wear them to work.  Gap's written policy went through various revisions during the relevant time period from "employees are encouraged to wear Gap or Gap-like merchandise," to "employees are required to wear Gap or Gap-like merchandise," to "employees are not required to purchase or wear Gap Brand merchandise."  Unlike Tommy Bahama's written uniform policies, Gap did not provide its employees any Gap merchandise under any version of its written policy.  In denying class certification, the Court stated:

> "Each class member would have his or her own individual story to tell.  This goes to liability, not damages.  Clearly individual issues would overwhelm any common issues.  This is a show stopper.  The absence of a common class-wide method of proof goes to the core question:  whether employees were compelled to use their wages to purchase and wear Gap clothing as a condition of their employment.  A determination of this issue would require, at a minimum, individualized inquiries into what each manager instructed.  In addition, there would be a question of how each employee interpreted the instruction, whether each employee relied on the instruction and in fact purchased and wore Gap clothing to work.  It is not enough for the class representative to testify as to his or her story.  There must be a common method of proof that tends to establish the required elements of liability as to all class members."  *Id.* at *12-*13.

---

[12]   *See* Sonne Decl ¶¶ 20-23, and Exhibits R, S and T.

[13]   *See* Declarations of Lindsey Tews, ¶ 3, and Kyle Zitek, ¶¶ 3-5, filed herewith.

Despite the differences between the laws and the written uniform policies at issue in the *Gap* case and this case, the same core question presented in the *Gap* case must be answered here:  Were Tommy Bahama employees required to purchase Tommy Bahama clothing as a condition of employment?  To answer that question would require several individualized inquiries:  (1) Did employees purchase Tommy Bahama clothing to wear to work?  If so, why?  (2) Were employees instructed to purchase Tommy Bahama clothing to wear to work?  If so, by whom and was the person authorized to give such an instruction?  (3) Was there any variation between what managers instructed employees to do at each of the stores or restaurants with regard to uniforms?[14]  (4) How did each employee interpret what manager(s) said? (5) Was the employee's interpretation of what the manager(s) supposedly said reasonable?  (6) Are any of the uniform items generally usable in the employee's occupation or outside of work?[15]  (7) Did the employee wear the item only to work, or also outside of work and derive a benefit from it?  (8) Did the employee wear the item long after his/her employment ended?

Likewise, several individualized inquiries would be necessary to determine whether a putative class member incurred any uniform maintenance costs that Defendant was required to reimburse:  (1) Did each employee dry-clean or iron uniform items he or she wore to work?  If so, why?  (2) Did the uniform item require dry-cleaning or ironing?  (3) Did the employee disregard the care

[14] As of March 17, 2010, there were twenty Tommy Bahama retail stores and two restaurants in California.  Declaration of Joan Wright, ¶ 2, Dkt. 37-1, p. 2.

[15] The Industrial Welfare Commission ("IWC") has accepted the enforcement policy of the Division of Labor Standards Enforcement ("DLSE") described as follows: "The definition and [DLSE] enforcement policy is sufficiently flexible to allow the employer to specify basic wardrobe items which are generally usable in the occupation, such as white shirts, dark pants and black shoes and belts, all of unspecified design, without requiring the employer to furnish such items.  If a required black or white uniform or accessory does not meet the test of being generally usable in the occupation the employee may not be required to pay for it."  (DLSE Enforcement Policies and Interpretations Manual (June 2002), § 45.5.5, a copy of which is attached as Ex. C to Defendants' Request for Judicial Notice.

OPPOSITION TO MOTION FOR CLASS CERT

instructions on the tag of any uniform item he or she wore to work?  (4) Did the employee have a choice of selecting uniform items that did not require dry-cleaning or ironing but nonetheless opted for items that required such care?  (5) Did the employee have access to a steamer at work to iron uniform items while on the clock?[16]  (6) How much time did each employee spend per week maintaining their uniform and did it vary from week to week?  (7) How much did it cost each employee to maintain his or her uniform per week and did it vary from week to week?  (8) Was the amount of time or expense incurred by each employee maintaining their uniform necessary and reasonable?

Like the *Gap* case, there is no common class-wide method of proof in this case to answer the foregoing questions.  Other federal decisions confirm this.  In *Lanzarone v. Guardsmark, LLC,* No. CV06-1136, 2006 U.S. Dist. LEXIS 95785 (C.D. Cal. Sept. 7, 2006), the plaintiff sought to certify a class of uniformed security officers in California.  The plaintiff alleged, *inter alia*, that his Guardsmark supervisor orally misled him to believe that his hourly uniform maintenance allowance was not part of the total hourly rate orally offered to him at his time of hiring.  The Court denied class certification, finding that plaintiff's uniform claim did not satisfy the typicality requirement under Rule 23(a)(3) or the preponderance requirement under Rule 23(b)(3) because there was insufficient evidence to conclude that his alleged oral conversation(s) with his supervisor were conducted pursuant to a written script or other standardized company policy.  The Court stated: "If a claim is based substantially on oral rather than written communications, then Rule 23(a)(3) is not satisfied and treatment as a class action is inappropriate as a matter of law."  *Id.* at *20.  Here, the "evidence" upon which Plaintiffs rely for an alleged corporate policy requiring employees to purchase Tommy Bahama uniforms is nothing more than vague assertions by a handful of putative class members of

---

[16] According to Michael Shimer, General Manager of the Palm Desert restaurant, employees sometimes steamed an item of clothing while on the clock using the in-store steamer.  Shimer Decl., ¶ 6.

1   what was "expected" of them by unidentified members of "management."  Like

2   *Lanzarone*, Plaintiffs' uniform claim does not satisfy Rule 23(a)(3) as a matter of

3   law.

4          More recently, in *Washington v. Joe's Crab Shack*, No. C 08-5551, 2010 WL

5   5396041 (N.D. Cal. Dec. 23, 2010), the plaintiff sought to certify a class of

6   restaurant employees.  Plaintiff claimed that employees were not given a sufficient

7   number of uniforms and were required to purchase, without reimbursement, any

8   additional uniforms that they needed for work.  *Id.* at 4.  In denying class

9   certification of the uniform claim because it did not meet the predominance

10  requirement under Rule 23(b)(3), the Court stated:

11          "While plaintiff provides declarations from six employees, who claim that
            they purchased T-shirts, the declarations provide no details of the
12          circumstances under which they did so.  By contrast, a number of Crab
            Addison's declarants state that they were provided with T-shirts in accordance
13          with Crab Addison's written policy. **This dispute in the evidence highlights
            the need for individualized inquiries."**  *Id.* at *13, emphasis added.

14

15  Similarly, the dispute between the evidence submitted by Plaintiffs and the evidence

16  submitted by Defendant in this case highlights the need for individualized inquiries

17  to resolve the uniform claim.

18          Finally, in *Drake v. Morgan Stanley,* No. CV 09-6467, 2010 U.S. Dist.

19  LEXIS 47627 (C.D. Cal. Apr. 30, 2010), the plaintiffs sought to certify a class of

20  financial advisors, alleging that the defendants systematically denied them overtime

21  pay and adequate expense allowances.  Plaintiffs alleged that defendants knowingly

22  required them to pay for job-related expenses for such things as travel, postage, and

23  even compensation of assistant staff.  In denying class certification of plaintiffs'

24  claim under Labor Code § 2802, the Court stated:

25          "As to Plantiffs' Expense Reimbursement Class, under California law,
            questions as to whether Defendants were required to reimburse employees'
26          claimed business expenses involved an individualized factual determination
            of whether each employee (1) incurred an expense (2) that was necessary (3)
27          and reasonable (4) as a direct consequence of the discharge of his or her
            duties. *Cal. Lab. Code § 2802*; *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42
28          Cal. 4th 554, 169 P.3d 889, 897-98 (2007).  These questions alone
            demonstrate the predomination of individualized issues . . . ."  *Id.* at * 23.

-10-

OPPOSITION TO MOTION FOR CLASS CERT

As demonstrated above, there is no common class-wide method of proof to answer the above questions in this case as to Plaintiffs' uniform claim.  Furthermore, neither Plaintiffs' experts nor Plaintiffs' survey of putative class members demonstrate a common class-wide method of proof of Plaintiffs' uniform claim.[17] Plaintiffs fail to cite to a single case in their moving papers in which a court certified a uniform claim.[18]

### C. Plaintiffs' Proposed Meal and Rest Break Class Fails To Satisfy The "Predominance" Requirement under Rule 23(b)(3)

#### 1. Defendant's Meal Break Policy Complies with the Law

Plaintiffs erroneously allege that Defendant has a "corporate policy of preventing restaurant employees from taking a meal break during their work shifts" based on a quote taken out of context from Tommy Bahama's Hospitality Guide. (Motion, 15:9-15).[19]  Had Plaintiffs included the first paragraph quoted below, it is abundantly clear that the second paragraph which Plaintiffs quoted in their Motion refers only to staff members eating Tommy Bahama food during their shift, and not to any prohibition of taking a meal break during their shift:

> A discount of 50% is provided to all café (and retail) staff members and three guests at any time during normal business hours.  We expect one to be out of uniform (which by the way does not mean that you cannot come in wearing Tommy Bahama apparel but rather that you have changed clothes if you worked earlier in the day) – to behave well (we will hold you to a higher standard than one of our guests) – to tip appropriately (meaning based on the actual value of the meal).

[17] *See* ¶ ¶ 34-66 of Declaration of Robert Crandall, Defendant's expert, filed herewith.

[18] Plaintiffs cite to *Wolin v. Jaguar Land Rover*, 617 F. 3d 1168 (9th Cir. 2010), in support of their erroneous assertion that "certification is proper when Plaintiffs demonstrate that a sufficiently numerous subset of the class has experienced harm from Defendants' corporate policies." (Motion, fn. 36).  *Wolin* was a products liability case involving an automobile design defect that is totally inapposite to the facts of this case.  The fact that Plaintiffs cite to such a case only serves to highlight the dearth of case law supporting certification of their uniform claim.

[19] Not surprisingly, Plaintiffs did not include page 6 of the Hospitality Guide from which they take the quote out of context.  (*See* Ex. K to Harris Decl.)  The missing page 6 is attached as Ex. A to the Declaration of Joan Wright filed herewith.

> While you are not allowed to have a meal during your shift you may eat, at a 50% discount either following your lunch shift or prior to your dinner shift – generally those hours are form 3 pm to 5 pm each day.  Other times need approval of the café manager on shift.  Please note, retail staff and management that choose to have a shift meal can do so during whatever time they are able to take a break. [20]

Joan Wright also testified at the Rule 30(b)(6) deposition of Defendant that the text quoted above is not a prohibition of restaurant employees taking meal breaks during their shift.[21]  Plaintiffs also failed to cite to the meal break policy in Tommy Bahama's Employee Handbook which states:

> "Non-Exempt Employee Meal Periods should generally be scheduled not more than five hours after their start time.  Meal breaks are generally at least 30 minutes.  An employee's meal period may be waived by mutual consent of both the employer and employee when an employee works less than 6 hours, and according to applicable state law.  Employees are not paid for meal breaks.  Exempt Employees may take breaks as is appropriate."[22]

The above meal break policy flies squarely in the face of Plaintiffs' baseless assertion that Defendant has a corporate policy of requiring restaurant employees to work in excess of five (5) hours per day without a 30 minute meal break.

### 2.    Plaintiffs' Meal Break Claim Fails to Satisfy the Predominance Requirement

Plaintiffs seek to certify a garden-variety meal period claim in which they allege that class members were improperly deprived of meal periods, and they were therefore entitled to an extra hour of pay pursuant to Labor Code § 226.7.  Under California law, employers are only obligated to "provide" an opportunity to take meal breaks; they are not required to force employees to take them.  *See Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 (2007) (a violation occurs only where the employee is "***forced*** to forgo his or her meal period").  *See also White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1088 (N.D. Cal. 2007) ("the statutory term 'provide' … demonstrates that the California Legislature intended only for

---

[20] *See* Wright Decl., Ex. A.

[21] *See* Wright depo., 160:11-161:19, a copy of which is attached to the Sonne Decl.

[22] *See* page 51 of the April 2009 and April 2007 Employee Handbooks, and page 49 of the July 2005 Employee Handbook, attached as Ex. B to the Wright Decl.

-12-

OPPOSITION TO MOTION FOR CLASS CERT

1    employers to *offer* meal periods – not to ensure that those periods were actually

2    taken."); *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 586-587 (C.D. Cal.

3    2008); *Washington v. Joe's Crab Shack*, *supra*, at *12.  Thus, in order to ascertain

4    whether a violation occurred, ***each and every*** putative class member must be asked

5    *if* he or she missed a meal break, *when* this occurred (if ever) and, most importantly,

6    ***why*** the meal break was not taken.[23]  If the particular employee testifies that he or

7    she simply chose not to take a particular meal break (or, voluntarily decided to

8    shorten it), there is no violation.[24]  If, on the other hand, the employee asserts that

9    Defendant failed to provide an opportunity to take a break, a violation *might* exist

10   depending on the circumstances.

11       Numerous courts have recently held that meal period claims require such an

12   exceedingly individualized inquiry that they are not proper for class wide

13   adjudication.  For example, in *Brown*, *supra*, the court held that, "Because FedEx

14   was required only to make meal breaks and rest breaks available to Plaintiffs,

15   Plaintiffs may prevail only if they demonstrate that FedEx's policies deprived them

16   of those breaks.  Any such showing will require substantial individualized fact

17   finding…."  *Brown*, 249 F.R.D. at 586.  Another recent case, *Kenny v. Supercuts,*

18   *Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008), determined that "[l]iability cannot be

19   established without individual trials… to determine *why* each class member did not

20

21   [23] As set forth in detail in the declaration of Defendants' expert, Robert Crandall,
     several operational and economic factors can influence rest and meal period

22   opportunities and drive variability in experiences across class members.  *See*
     Crandall Decl., ¶ ¶ 17-18,  Furthermore, an analysis of the time clock data for

23   Tommy Bahama restaurant employees shows that: 1) a large number of shifts
     worked by employees were shorter than 5 hours, and an even greater number

24   shorter than 6 hours, and therefore were not eligible for meal breaks; and 2) the
     potential meal violation rate per shift worked varies tremendously across all

25   restaurant employees, and even across restaurant employees who worked at the
     same location.  *See* Crandall Decl., ¶ ¶ 15, 19-20, 28-33, and 82.  Therefore,

26   individualized inquiry would be required to determine which employees did or did
     not take their meal breaks, and why.  *Id.*

27   [24] *See* ¶ ¶ 1-5 of the declarations of putative class members submitted by Defendants
     in which they state that if they did not take a meal break, it was their choice not to

28   take one.

1  clock out for a full 30-minute meal break on any particular day." *See also*

2  *Washington v. Joe's Crab Shack*, *supra*, at *12; *Salazar v. Avis Budget Group, Inc.*,

3  251 F.R.D. 529, 532-33 (S.D. Cal. 2008); *Kohler v. Hyatt Corp.*, No. EDCV 07-

4  782-VAP, 2008 U.S. Dist. LEXIS 63392, at *8 (C.D. Cal. July 23, 2008); *Kimoto v.*

5  *McDonalds Corp.*, No. CV 06-3032 PSG, 2008 WL 4690536, at *5-7 (C.D. Cal.

6  Aug. 19, 2008); *Gabriella v. Wells Fargo, Inc.*, No. C 06-4347 SI, 2008 WL

7  3200190, at *3-4 (N.D. Cal. Aug. 4, 2008).  As such, to certify their meal period

8  claim, Plaintiffs must establish that Defendant's meal break policy is unlawful on its

9  face or demonstrate the existence of a pervasive practice of actually prohibiting

10  meal breaks which Plaintiffs have failed to do.  *See*, *e.g.*, *Brown*, 249 F.R.D. at 586;

11  *Gabriella*, 2008 WL 3200190, at *5.

### 3.  Defendant's Rest Break Policy Complies with the Law

13  The rest break meal break policy in Tommy Bahama's Employee Handbook

14  states:

> "Employee's [sic] who are  non-exempt (hourly) receive a paid 10-minute rest break for each 4 hours worked (or major fraction thereof), as practical in [the] middle of each work period.  Employees who work through rest breaks may not leave work early and will not be paid additional compensation."[25]

17
18  The foregoing policy complies with § 12 (Rest Periods) of Wage Order 5-2001 and

Wage Order 7-2001.

### 4.  Plaintiff's Rest Break Claim Fails to Satisfy the Predominance Requirement

21  Under California law, an employer satisfies its duty with respect to rest

22  periods by "authorizing and permitting" employees to take rest periods of 10-

23  minutes for every 4 hours worked or major fraction thereof.  "[T]he words

24  'authorize' and 'permit' only require that the employer make rest periods available."

25  *White*, 497 F. Supp. 2d at 1085.  Thus, "employers need not ensure that employees

26  actually take their rest periods." *Id*.  Accordingly, the vast majority of courts

27  considering certification of rest period claims have concluded that class treatment is

---

28  [25] *See* Wright Decl., Ex. B.

1   improper because – to establish a violation – each putative class member must be
2   *individually* questioned as to *why* he or she did not take a rest break on any
3   particular occasion.  If the employee was "forced" by the employer to forego a
4   break, a potential violation exists.  If the employee simply chose not to take a break,
5   the opposite is true.[26]  *Kimoto*, 2008 WL 4690536, at *5-7 ("Plaintiff's theory
6   appears to be that the McDonald's was too busy to give employees a meaningful
7   opportunity to take breaks.  Assessing whether a McDonald's employee was
8   *authorized* by his or her manager to take a rest or meal period would require an
9   individualized, highly fact-specific inquiry….") (emphasis in original); *Brown*, 249
10  F.R.D. at 586 (plaintiffs may prevail in a meal or rest period claim only if they
11  demonstrate that the employer's "policies deprived them of those breaks," a showing
12  that requires "substantial *individualized* fact finding.") (emphasis added);
13  *Washington v. Joe's Crab Shack*, *supra*, at *13 ("as with meal breaks, the inquiries
14  would not answer the critical question of *why* rest breaks were not taken—a
15  question that will necessitate an individualized inquiry into each employee's
16  particular circumstances") (emphasis in original).  Thus, certification of the rest
17  break claim should be denied.

    **D.  Plaintiffs' Proposed Uniform, Meal And Rest Break Classes Fail To Satisfy The "Superiority" Requirement under Rule 23(b)(3)**

18
19      The second requirement for class certification under Rule 23(b)(3) is that the
20  class action is superior to other methods of adjudication.  In determining whether a
21  class action is the superior method, courts must consider the four non-exclusive
22  factors enumerated in Rule 23(b)(3):
23
24      (A)  the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action. FRCP 23(b)(3).
25
26

27  [26] *See* ¶ ¶ 2-6 of the declarations of putative class members submitted by Defendants in which they state that if they did not take a rest break, it was their choice not to take one.
28

1    Regarding factors (A), (B) and (C) referenced above, 18 restaurant employees

2  who did not sign Settlement Agreements filed their own individual lawsuit on

3  February 18, 2010 in Orange County Superior Court against Defendant entitled,

4  *Eduardo Albarran et al. v. Tommy Bahama*, et al., Case No. 30-2010-00345002

5  ("*Albarran*" lawsuit), in which they allege nearly identical claims as those alleged in

6  the instant lawsuit, including claims for failure to reimburse for maintenance of

7  uniforms and meal and rest period violations.  On October 26, 2010, another

8  restaurant employee who did not sign a Settlement Agreement filed her own

9  individual lawsuit against Defendant in Orange County Superior Court, entitled,

10  *Aynsley Parker v. Tommy Bahama R&R Holdings, Inc*,  Case No. 30-2010-

11  00419881 ("*Parker*" lawsuit), in which she alleges claims for failure to reimburse

12  for maintenance of uniforms and meal and rest period violations.[27]  Under applicable

13  case law, if there is a realistic alternative to a class action, the superiority

14  requirements of Rule 23(b)(3) are not satisfied.  *Amchem Prods., Inc. v. Windsor*,

15  521 U.S. 591, 617 (1997) (in drafting Rule 23(b)(3), "the Advisory Committee had

16  dominantly in mind vindication of 'the rights of groups of people who **individually**

17  **would be without effective strength** to bring their opponents into court at all'")

18  (citation omitted) (emphasis added); *Valentino v. Carter-Wallace*, 97 F.3d 1227,

19  1235-35 (9th Cir. 1996) ("a class action is a superior method for managing litigation

20  **if no realistic alternative exists**") (emphasis added); *Culinary/Bartenders Trust*

21  *Fund*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("[I]f a comparable evaluation of other

22  procedures reveals **no other realistic possibilities**, [the] superiority portion of Rule

23  23(b)(3) has been satisfied.") (emphasis added).  Here, the fact that 19 employees

24  filed their own individual lawsuits clearly demonstrates that there is a realistic

25  alternative to a class action for employees to adjudicate any claims they wish to

26  bring against Defendant.  Moreover, the fact that a single plaintiff filed the *Parker*

27

28
_____
[27] A copy of the complaints in the *Albarran* and *Parker* lawsuits are attached as Exhibits D and E to Defendant's Request for Judicial Notice.

-16-

1   lawsuit in Superior Court where the minimum amount in controversy exceeds

2   $25,000 demonstrates that there is sufficient incentive for an individual plaintiff to

3   pursue her claims.  *Cal. Code of Civil Proc.*, §§ 85 and 88; *Mendoza v. Home Depot,*

4   *U.S.A. Inc.*, CV 09-05843, 2010 WL 424679 at *10 (C.D. Cal. 2010).

5          Furthermore, to date, over 180 current and former restaurant employees have

6   signed Settlement Agreements in which they have rejected litigation in favor of

7   settling any claims they may have against Defendant.[28]  In doing so, these

8   employees have expressly stated their desire to opt out of the instant lawsuit:

9          "Employee agrees that in the event s/he receives any notice from any claims
           administrator, attorney, law firm or other person purporting to represent
10         Employee or any class or group which includes Employee,  and such notice
           references any lawsuit or threatened lawsuit against the Company that
11         encompasses any of the Claims released by this Agreement, Employee will
           promptly notify such claims administrator, attorney, law firm, or other person
12         that Employee does not wish to participate in and specifically "opts out" of
           any class action, representative action or collective action against the
13         Company."[29]

14   The foregoing demonstrates that there is a realistic alternative to a class action for

15   employees to resolve any claims they may have against Defendant.  Defendant also

16   has a fundamental due process right to raise affirmative defenses to the claims of

17   those putative class members who signed Settlement Agreements.[30]  *Mendoza v.*

18   *Home Depot, U.S.A. Inc.*, *supra*, at *10 ("A class action is not a superior method,

19   particularly in light the fact that Home Depot should be entitled to raise affirmative

20   defenses to individual plaintiff's claims").

21          Finally, because the Plaintiffs have failed to satisfy the "predominance"

22   requirement under Rule 23(b)(3) for their proposed uniform, meal and rest break

23   _____

24   [28] To date, a total of 189 current and former restaurant employees have signed
     Settlement Agreements.  Wright Decl., ¶ 4.  *See also* exemplar of the Settlement
25   Agreement attached as Ex. K to the Sonne Decl.

     [29] Sonne Decl., Ex. K, p. 4, ¶ 7.

26   [30] *See* Defendant's Answer to Plaintiffs' Fourth Amended Complaint, Dkt. No. 121,
27   Thirteenth Affirmative Defense (Release) and Thirty-Fourth Affirmative Defense
     (Setoff, Offset, Recoupment) based on the Settlement Agreements and
28   consideration paid to putative class members referenced in the Settlement
     Agreements.

classes as previously discussed, they have also failed to satisfy the superiority requirement under Rule 23(b)(3)(D).

**E.    Plaintiffs' Proposed Uniform, Meal And Rest Break Classes Fail To Satisfy The "Typicality" And "Adequacy" Requirements under Rule 23(a)**

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members, have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and(2) that Plaintiffs are represented by qualified and competent counsel."  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007).

Here, there is an irreconcilable conflict of interest between the Plaintiffs and the proposed class.  The interests of the Plaintiffs are not aligned with the interests of the restaurant employees who signed Settlement Agreements because the former are seeking to deprive the latter of the benefits of the Settlement Agreements.[31] Moreover, Plaintiffs seek to represent employees who have expressly stated in their Settlement Agreements that they do not wish to participate in this lawsuit.

**III.    THE PROPOSED RELEASE SUBCLASS FAILS TO SATISFY THE RULE 23 REQUIREMENTS**

Plaintiffs cannot satisfy the "numerosity" requirement under Rule 23(a)(1) because only seven putative class members have submitted declarations in which

---

[31] *See* exemplar of the Settlement Agreement attached as Ex. K to the Sonne Decl.

they seek to disavow the Settlement Agreement they signed.[32]  Seven is clearly not so numerous as to make joinder impracticable.

Plaintiffs cannot satisfy the "typicality" or "adequacy" requirements under Rule 23(a)(3) and (4) because (1) they have an irreconcilable conflict of interest by seeking to deprive over 180 current and former employees of the benefits of the Settlement Agreements they signed, and (2) Plaintiffs seek to represent employees who have expressly stated in their Settlement Agreements they do not wish to participate in this lawsuit.

As for the "preponderance" requirement under Rule 23(b)(3), Plaintiffs assert in conclusory fashion that the "release present [sic] substantial factual and legal issues that clearly dwarf any individual issues," but fail to identify what those factual and legal issues may be.  (Motion, 19:25-26).  The seven declarants referenced above state that they were coerced or pressured into signing the Settlement Agreements, or did not fully understand what they were signing, or where somehow misled by Defendant.[33]  If that is the basis for Plaintiffs' claims, then resolution of those factual issues would require a highly individualized inquiry which is unsuitable for class certification.[34]

Finally, Plaintiffs cannot satisfy the "superiority" requirement under Rule 23(b)(3) for the same reasons stated in Section II. D., *supra*.

## IV.   PLAINTIFFS' DERIVATIVE CLAIMS SHOULD NOT BE CERTIFIED

Plaintiffs' seek to certify three derivative claims for alleged (1) paystub violations under Labor Code § 226, (2) waiting time penalties under Labor Code § 203, and (3) PAGA penalties.  (Motion, pp. 9-10).  Because Plaintiffs' primary

---

[32] *See* Decl. of Jennifer Boyens, Rachel Griffin, Lejla Miletic, Jennifer Mund, Lawrence Percival, Jenessa Smith and Michelle Smith attached as part of Ex. Q to Harris Decl., Dkt. No. 114-3, pp. 62-102.

[33] *Id.*

[34] *See* pages 3-10 of "Defendants' Opposition to Plaintiffs' Ex Parte Application for Order to Show Cause and Temporary Restraining Order," Dkt. No. 26, filed on 3/10/10, as to why Plaintiffs' assertions are false.

1  claims are not amenable to class treatment, their derivative claims should also not be

2  certified.  In addition, Plaintiffs' paystub claim should not be certified because it

3  does not present predominant, common issues.  *See, e.g., Jasper v. C.R. England,*

4  *Inc.*, 2009 U.S. Dist. LEXIS 34802 at *15 (C.D. Cal. 2009) (certification of paystub

5  claim denied because "questions of… how each class member was injured is likely

6  to require individualized proof."); *Villacres v. ABM Industries Inc.*, 2009 WL

7  111686, at *3 (C.D. Cal. 2009) (denying motion for class certification on claim for

8  section 226(e) penalties).  The same is true of Plaintiffs' § 203 claim because only a

9  willful failure to pay an employee's final wages triggers waiting time penalties.  Cal.

10 Labor Code § 203; *Amaral v. Cintas Corp.* 163 Cal. App. 4th 1157, 2104 (2008)

11 ("presentation of a good faith defense, based in law or fact, will negate a finding of

12 willfulness."); *Smith v. Rae-Venter Law Group*, 29 Cal. 4th 345, 353-54 (2002)

13 (overruled on other grounds)(affirming trial court's denial of waiting time penalties

14 based on evidence showing that employer acted in good faith in failing to pay

15 employee wages at a sooner date).  This also requires individualized inquiry which

16 is not suitable for class certification.  *See*, *e.g.*, *Spainhower et al. v. U.S. Bancorp, et*

17 *al.*, 2010 WL 1408105, at * 1 (C.D. Cal. 2010) (denying motion for class

18 certification of wage/hour claims that included, *inter alia*, a cause of action for

19 waiting time penalties).

20 **V.    CONCLUSION**

21        For each and all of the reasons discussed above, Defendant respectfully

22 requests that the Court deny Plaintiffs' motion for class certification in its entirety.

23

24 Dated:  February 9, 2011        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

25                                By _____/s/ Ryan D. McCortney_____

                                           RYAN D. MCCORTNEY

26

27                                Attorneys for Defendants
                                  TOMMY BAHAMA R&R HOLDINGS, INC.

28