# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | |
|---|---|
| **CASE NO.:** CV 09-08924 SJO (CWx) | **DATE:** June 27, 2011 |
| **TITLE:** Enrique Madrigal, et al. v. Tommy Bahama Group, Inc., et al. | |

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                           Not Present
Courtroom Clerk                            Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS** [Docket No. 114]

This matter is before the Court on Plaintiffs Enrique Madrigal ("Madrigal"), Cristina Martinez ("Martinez"), Tracey Milsop ("Milsop"), Michael Jensen ("Jensen"), and Lawrence Percival's ("Percival") (collectively, "Plaintiffs") Motion to Certify Class ("Motion"), filed on January 12, 2011. (Docket No. 114.) Defendant Tommy Bahama R&R Holdings, Inc. ("Defendant") filed an Opposition, to which Plaintiffs lodged a Reply. Plaintiffs and Defendant respectively filed Requests for Judicial Notice. Defendant also submitted Evidentiary Objections.[1] The Court found this matter suitable for disposition without oral argument and vacated the hearing set for March 14, 2011. *See* Fed. R. Civ. P. 78(b). For the following reasons, Plaintiffs' Motion is DENIED.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs bring this action on behalf of themselves and all other non-exempt restaurant and retail store employees and former employees of Defendant (the "Class") within the state of California between December 2005 and the present (the "Class Period"). (Fourth Am. Compl. ("FAC") ¶¶ 1, 25.) Defendant is a Georgia corporation with its principal place of business in Atlanta, Georgia. Defendant designs and sells men's and women's apparel. (*Id.* ¶ 12.) It also operates retail stores and restaurants. (*Id.*)

On January 10, 2011, Plaintiffs filed their Fourth Amended Complaint. Plaintiffs allege that Defendant maintained and enforced against its non-exempt employees a number of unlawful practices and policies in violation of California state law. They assert that Defendant required employees to incur costs and expenses relating to uniforms as a condition of employment. (FAC ¶ 2.) Specifically, Plaintiffs assert that "Defendant had a uniform policy requiring its non-exempt

---

[1]    In denying Plaintiffs' Motion, the Court considered all evidentiary support provided by Plaintiffs. As such, Defendant's evidentiary objections are moot.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   <u>CV 09-08924 SJO (CWx)</u>                    DATE:   <u>June 27, 2011</u>

employees to purchase new uniforms." (*Id.* ¶ 18.) Plaintiffs also allege that Defendant had a policy requiring them to dry clean their uniforms, while not providing them with a weekly allowance to cover the expenses incurred for the maintenance of the uniforms. (*Id.* ¶ 17.) Moreover, Plaintiffs allege that Defendant required employees to work at least five hours without a meal break period and to work in excess of four consecutive hours without providing a rest break. (*Id.* ¶¶ 19, 20.)

On January 12, 2011, Plaintiffs filed the instant Motion to Certify the following Class and Subclasses: (1) Proposed Hourly Retail and Restaurant Employees Class; (2) Proposed Restaurant Employees Subclass; and (3) Proposed Release Subclass. (*See generally* Mot.)

II.    <u>DISCUSSION</u>

   A.    <u>Requests for Judicial Notice</u>

Plaintiffs submit a Request for Judicial Notice of the following documents: (1) a California Department of Industrial Relations - Division of Labor Standards Enforcement's ("DLSE") explanation on regulations relating to uniforms; and (2) an Opinion Letter from DLSE relating to tropical shirts. Defendant filed a Request for Judicial Notice of various documents that include: (1) California Industrial Welfare Commission Orders; (2) a DLSE Manual; (3) court filings relating to similar lawsuits brought by other non-exempt employees in state court; and (4) Opinion Letters and publications from the U.S. Department of Labor.

Federal Rule of Evidence 201(b)(2) permits courts to take judicial notice of facts that are "not subject to reasonable dispute" in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court may take judicial notice of court filings and other matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Here, judicial notice of the records is appropriate because they are public records and are not subject to reasonable dispute. Neither party has objected to the Requests for Judicial Notice. Accordingly, the Court GRANTS Defendant's and Plaintiffs' Requests for Judicial Notice.

   B.    <u>Legal Standard for Motion to Certify Class</u>

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits; and (2) to protect the rights of persons who might not be able to present claims on an individual basis." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure ("Rule") 23 governs class certifications. Fed. R. Civ. P. 23. "[T]he party seeking class certification . . . bears the burden of demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 09-08924 SJO (CWx)    DATE: June 27, 2011

F.3d 718, 724 (9th Cir. 2007). A district court must "ensure that Rule 23 requirements are actually met, not simply presumed from the pleadings." *Dukes v. Wal-Mart, Inc.*, 603 F.3d 571, 582 (9th Cir. 2010). In doing so, the "district court[] [has] broad discretion to determine whether a class should be certified." *Id.* at 579. A district court's decision regarding class certification is reviewed for abuse of discretion. *See Lozano*, 504 F.3d at 725.

Rule 23(a)'s "four threshold requirements" are: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Prod. v. Windsor*, 521 U.S. 591, 612 (1997). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 161.

After a district court is satisfied that the prerequisites of Rule 23(a) have been met, "the court must then consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b)." *Pelton v. Panda Rest. Grp., Inc.*, No. CV-10-8458, 2011 WL 1743268, at *2 (C.D. Cal. May 3, 2011). Here, Plaintiffs seek certification under Rule 23(b)(3).

    C.    Proposed Class of All Hourly Retail and Restaurant Employees

Plaintiffs request the Court to certify a Proposed Hourly Retail and Restaurant Employees Class. Plaintiffs allege that putative class members were similarly injured by Defendant's policies that required them to purchase and maintain uniforms in violation of California Labor Code section 203 ("section 203"). (*See* Mot. 5:3-10:8.)

        1.    Threshold Requirements of Rule 23(a)

            a.    Numerosity

The numerosity requirement under Rule 23(a) is met when the party seeking certification shows that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a) does not require joinder to be impossible, only that potential class members would suffer strong "difficulty or inconvenience" if joinder were required. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). The analysis is not tied to any fixed numerical threshold. *See Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). Nonetheless, "[c]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members*." EEOC v.*

*Kovacevich "5" Farms*, No. CV-F-06-165, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007); *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (unpublished).

Here, Plaintiffs allege that the putative class consists of approximately 1,200 members who worked for Defendant from December 2005 to the present. (Harris Decl. in Supp. of Pls.' Mot. ¶ 6.) Moreover, Defendant concedes that there are currently 200 to 250 retail employees and 159 restaurant employees. (Dep. of Joan Wright 42:16-17, 85:24-86:16.) Requiring joinder of this number of former and current employees would not be practicable. Moreover, Defendant does not assert that Plaintiffs have failed to meet the numerosity requirement for the Proposed Hourly Retail and Restaurant Employees Class. (*See generally* Opp'n.) Accordingly, Plaintiffs meet their burden to establish the numerosity requirement under Rule 23(a).

### b. Commonality

To prevail under Rule 23(a)(2)'s commonality inquiry, the plaintiff must establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The inquiry "focuses on the relationship of common facts and legal issues among class members." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010). The Ninth Circuit has held that Rule 23(a)(2) is to be "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Thus, "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* "The commonality test is 'qualitative rather than quantitative' - one significant issue common to the class may be sufficient to warrant certification . . . ." *Dukes*, 603 F.3d at 599 (citations omitted).

For the Proposed Hourly Retail and Restaurant Employees Class, Plaintiffs argue the existence of common questions of law and fact. They assert that the proposed class members share the following facts: (1) they are non-exempt employees or former employees of Defendant; (2) they were forced to comply with Defendant's uniform policy; and (3) they were injured by Defendant because they had to purchase and maintain their uniforms. (Mot. 5:22-27.) Plaintiffs also allege that the question of whether Defendant's uniform policy violates section 203 is common to all putative class members. (*Id.* at 9:11-10:8.) In light of the permissive nature of the commonality inquiry, Plaintiffs have proffered sufficient evidence to show that the putative class share a common core of facts and legal issues. Accordingly, Plaintiffs have met the commonality requirement of Rule 23(a)(2).

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As the Ninth Circuit recently explained, "[a]lthough the commonality and typicality requirements of Rule 23(a) tend to merge, each factor serves a discrete purpose. Commonality examines the relationship of facts and legal issues

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 09-08924 SJO (CWx)                    DATE: June 27, 2011

common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." *Dukes*, 603 F.3d at 612 n.37. In other words, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The typicality requirement tests whether the other members "have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

Several district courts, including this Court, have held that "[i]f a claim is based substantially on oral rather than written communications, then Rule 23(a)(3) is not satisfied and treatment as a class action is inappropriate as a matter of law." *Lanzarone v. Guardsmark Holdings, Inc.*, No. CV-06-1136, 2006 WL 4393465, at *7 (C.D. Cal. Sept. 7, 2006); *see also Spencer v. Cent. States, Se. & Sw. Area Pension Funds*, 778 F. Supp. 985, 990-91 (N.D. Ill. 1991); *Glick v. E.F. Hutton & Co.*, 106 F.R.D. 446, 449 (E.D. Pa. 1985). In *Lanzarone*, 2006 WL 4393465, at *7, a case on point and germane to the matter at hand, the court held that the plaintiff failed the typicality test. The court determined that the uniform claim was "atypical as a matter of law because it inherently turn[ed] on [the plaintiff]'s alleged oral conversation(s) with his supervisor." *Id.* The plaintiff also had not presented any evidence that the "alleged conversation(s) were conducted pursuant to a written script or other standardized company policy." *Id.*

Plaintiffs argue that they are typical of the entire class because "Defendant maintains corporate policies that were implemented on both its restaurant and retail employees regarding uniform purchase and maintenance." (Mot. 11:10-13.) Plaintiffs, however, fail to provide any evidence of corporate policies that require employees to purchase uniforms or to maintain their uniforms through dry cleaning.[2] Defendant's Employee Handbook provides that "an employee [must] wear what is considered uniform pieces as distributed at the time of hire and seasonally or quarterly thereafter." (Harris Decl. Ex. B 70, 79, 85.) These uniform pieces are issued "at no cost" and "are discounted 100%" pursuant to Defendant's written policies. (*Id.* Ex. F 320; Ex. G 324; Ex. J 335; Ex. O 358.) Furthermore, Defendant's written policies do not expressly require employees to dry clean. (*See* Mot. 7:4-9.) Unable to point to a written policy, Plaintiffs proffer declarations from putative class members alleging that "[e]mployees are expected to purchase their own uniform items in order to have a variety of outfits to wear and to stay up with the season." (Decl. of

---

[2] Plaintiffs cite to Exhibit L of Wilmer J. Harris' declaration as proof that Defendant only provided "some" uniforms to its employees. (Mot. 7:24-28; Reply 1:24-25.) Exhibit L, however, contains no such statement. Exhibit L is Defendant's uniform policy in 2005 and it expressly provides that "[Defendant] issues uniforms, at no costs, to its entire café staff members." The Court declines to scour the record to provide evidentiary support for Plaintiffs' allegations. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.").

Bettina Bradbury ("Bradbury Decl.") in Supp. Pls.' Mot. ¶ 6; Decl. of Matthew Coulthard ("Coulthard Decl.") in Supp. of Pls.' Mot. ¶ 6.)  These declarations assert that "[Defendant] does not want [its] employees to be wearing the same outfit everyday and since management does not provide enough pieces to allow for variety [employees] have had to purchase [their] uniform pieces." (Bradbury Decl. ¶ 6; Coulthard Decl. ¶ 6.)  Similarly, prospective class members assert that "[m]anagement" "told [them] to take [their uniforms] to the dry cleaner."  (*See* Dep. of Rachel Griffin ("Griffin Dep.") 74:17-23.)  These instances show that Plaintiffs' causes of action relating to Defendant's uniform policies are based substantially on oral rather than written communications.  Plaintiffs also have "submit[ted] no evidence of a common scheme to mislead . . . [employees] through oral [communications]."  *Juarez v. Jani-King of Cal., Inc.*, ___ F.R.D. ___, 2011 WL 835196, at *8 (N.D. Cal. 2011) (holding that the "[p]laintiffs' experiences and claims [were] not typical of the class" because the plaintiffs' allegations of "oral promises" conflicted with written franchise documents).  As such,  Rule 23(a)(3)'s typicality requirement "is not satisfied and treatment as a class action is inappropriate as a matter of law."  *See Lanzarone*, 2006 WL 4393465, at *7.

### d.   Adequacy of Representation

Under Rule 23(a)(4), Plaintiffs must also establish that they "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To determine whether the representation meets this standard, [a district court] ask[s] two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).  Thus, in order to adequately represent the proposed class, Plaintiffs "must be part of the class and 'possess the *same interest* and suffer the *same injury*' as the class members."  *Amchem Prod., Inc.,* 521 U.S. at 625-26 (emphasis added); *see also Rodriguez v. W. Publishing Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) ("An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class.").  Under Rule 23(a)(4), Plaintiffs are also required to show that they are "represented by qualified and competent counsel."  *Dukes*, 603 F.3d at 614; *see also Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) ("Adequate representation 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'").

Plaintiffs establish that they will fairly and adequately protect the interests of the class.  There is no evidence that Plaintiffs and their counsel have any conflict of interest with the putative Hourly Retail and Restaurant Employee Class members.  Similarly, there is no evidence that Plaintiffs and their counsel will not prosecute the action vigorously.  Plaintiffs' counsel are also seemingly qualified and competent, having impressive credentials and experience in employment class actions.  (Harris Decl. ¶¶ 31-39.)  Therefore, Plaintiffs have met the fourth prerequisite under Rule 23(a).

In sum, though the other prerequisites of Rule 23(a) are satisfied, Plaintiffs do not meet their burden in showing that the typicality requirement has been met for the Proposed Hourly Retail and Restaurant Employees Class. Accordingly, Plaintiffs' Motion for Class Certification as to that class is DENIED.

        2.    Rule 23(b)(3)

Plaintiffs' Motion for Class Certification for all Hourly Retail and Restaurant Employees is also denied because Plaintiffs have not met the requirements of Rule 23(b)(3). Courts refer to the requirements of Rule 23(b)(3) as the "predominance" and "superiority" requirements. *See Amchem Prods., Inc.*, 521 U.S. at 615.

        a.    Predominance

Under Rule 23(b)(3), a class may only be certified if "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. at 623. Though it is "similar" to the commonality requirement of Rule 23(a)(2), "the predominance criterion is far more demanding." *Id.* at 623; *see also Hanlon*, 150 F.3d at 1019 (describing the commonality prerequisite of Rule 23(a)(3) as "less rigorous"). "[T]hus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1022. "The focus [of the predominance criterion] is on the relationship between the common and individual issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig. (Wells Fargo Home Mortg.)*, 571 F.3d 953, 957 (9th Cir. 2009). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. In contrast, when "claims require a fact-intensive, individual analysis," then class certification will "burden the court" and be inappropriate. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009); *Wells Fargo Home Mortg.*, 571 F.3d at 958 (reversing a certification of class action because "a fact-intensive inquiry into each potential plaintiff's employment situation" was required). The predominance inquiry requires a district court to "predict[] as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Dukes*, 603 F.3d at 593.

The Court finds *Howard v. Gap, Inc.*, No. C-06-06773, 2009 WL 3571984, at *1 (N.D. Cal. Oct. 29, 2009), instructive for the case at hand. In *Howard*, the plaintiff sought to certify a class of New York Gap employees, who were allegedly required to wear Gap clothing. *See id.* at 1. The written policy only "encouraged" employees to wear Gap clothing and explained that employees were provided discount and special purchase offers to help them meet Gap's dress code policy. *See id.* Thus, the plaintiff's claim was "predicated on *oral* instructions" that employees were required to purchase and wear Gap clothing. *See id.* at *4. The district court denied class

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   CV 09-08924 SJO (CWx)                    DATE:  June 27, 2011

certification because it determined that "individualized inquiries into what each manager instructed . . . how each employee interpreted the instruction, whether each employee relied on the instruction and in fact purchased and wore Gap clothing to work" would be required.  *Id.* at *5.  The court held that these individualized inquiries precluded "a common method of proof . . . to establish the required elements of liability as to all class members."  *Id.*

As previously established, Defendant does not have corporate policies mandating the purchase of uniforms and the maintenance of the uniforms through dry cleaning.  Plaintiffs' own evidence shows that Defendant did not mandate the purchase of uniforms.  Several of Plaintiffs' putative class members declare that "[they] never purchased [their] own uniforms."  (*See* Decl. of Natividad Brown in Supp. of Pls.' Mot. ¶ 7; Dep. of Marcus Whaley ("Whaley Dep.") 15:21-25 (admitting he never purchased Tommy Bahama clothing outside of his employment discount to wear at work); *see generally* Decl. of Nathan Cook in Supp. of Pls.' Mot. (making no mention of having to purchase extra uniforms despite a two-year employment with Defendant).)  The record also shows that Defendant did not mandate dry cleaning of uniforms.  The majority of the clothes available for employees to purchase with their 100% employee discount were machine washable.  Plaintiffs' own putative class members testified that machine washable uniforms did not need to be dry cleaned or ironed.  (*See* Griffin Dep. 85:9-12 (stating that uniforms were acceptable to wear out of the dryer).)  They also admitted that managers did not require employees to purchase dry-clean only uniforms.  (*Id.* at 19:2-6;  Dep. of Lawrence Percival ("Percival Dep.") 73:25-74:4.)  Moreover, Plaintiffs' proposed class members testified that management never talked to them or reprimanded them because of wrinkled clothing.  ( Dep. of Michael Jensen ("Jensen Dep.") 73:4-12; *see also* Griffin Dep. 88:4-7 (stating that employees who did not dry clean did not "draw[] attention by management").)[3]

Thus, as in *Howard*, the record shows that Plaintiffs' claims are "predicated on *oral* instructions."  *See Howard*, 2009 WL 3571984, at *4.  Certain prospective class members assert that "[m]anagement" "told [them] to take [their uniforms] to the dry cleaner."  (*See* Griffin Dep. 74:17-23.)  Therefore, to establish liability, individualized inquires would be required as to: (1) "what each manager instructed"; (2) "how each employee interpreted the instruction"; (3) "whether each employee relied on the instruction"; (4) whether the employee "in fact purchased and wore"

---

[3]  For example, one putative class member stated the following in his deposition:
   Defendant's Counsel:       "Was that a problem?  I mean, was that something that employees complained about on a regular basis that if my clothes are wrinkled, I get in trouble?"
   Putative Class Member:   "No, not really."
   Defendant's Counsel:       "Did you ever have a manager talk to you about wrinkled clothing?"
   Putative Class Member:   "No."
(Jensen Dep. 73:4-12.)

Defendant's uniforms for work related purposes; (5) whether the employee purchased non-machine washable uniforms; and (6) why the employee decided to purchase certain uniforms instead of washable uniforms. *See Howard*, 2009 WL 3571984, at *5. Without a company-wide written policy, liability "could only be demonstrated after individualized inquiry as to that employee's work history, and would reflect specific - and potentially idiosyncratic - instructions by location managers." *See Helm v. Alderwoods Grp., Inc.*, No. C-08-01184, 2011 WL 855810, at *5 (N.D. Cal. Mar. 9, 2011).

Moreover, proposed class members base their claims on their subjective beliefs that Defendant provided an insufficient number of uniforms. Yet, one employee may find the number of uniforms provided by Defendant sufficient, while another employee may not because of various reasons, like: (1) a personal desire to look stylish; (2) the number of hours worked by the employee; (3) the employee's position; and (4) an employee's cleanliness. This is reflected by the extremely divergent evidence regarding the number of uniforms putative members had to purchase. One employee purchased "60 additional uniform pieces" during her approximate two-year employment with Defendant, whereas another employee only purchased "8 additional pieces" during her three-year employment. (*Compare* Decl. of Joanne Gardner in Supp. of Pls.' Mot. ¶ 7 *with* Decl. of Marissa Gutierrez ("Gutierrez Decl.") in Supp. of Pls.' Mot. ¶ 7; *see also* Decl. of Paola Dipietro in Supp. of Pls.' Mot. ¶ 7 (stating that employee needed an additional 3-4 uniform pieces over a year); Decl. of Kara Forrest in Supp. of Pls.' Mot. ¶ 7 (25 uniform pieces purchased within less than a year).)

These facts support a finding that liability cannot be determined by common proof. Instead, very individualized inquiries will have to be made. Therefore, Plaintiffs do not meet their burden of showing that common issues of fact and law predominate.

b.  Superiority

Plaintiffs must also demonstrate that a class action would be a superior method of resolving this controversy. A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). It is also superior when no realistic alternative to a class action exists. *Id.* at 1234-35. In deciding whether a class action would be a superior method for resolving the controversy, the Court considers factors including: (1) the class members' interest in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation and of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Although individualized damages would not defeat the predominance requirement, they are considered when analyzing the superiority requirement, specifically when deciding whether class action will be manageable. *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990) (The "manageability requirement includes consideration of the potential difficulties in

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.:  CV 09-08924 SJO (CWx) | DATE: June 27, 2011 |

notifying class members of the suit, calculations of individual damages, and distribution of damages."). Therefore, where liability and damages are "dependent on the resolution of factual questions employee-by-employee, office-by-office," class action is not superior to other methods of adjudication because a jury trial will "devolve into an endless series of mini-trials." *Bryant v. Serv. Corp. Int'l*, No. C-08-01190, 2011 WL 855815, at *13 (N.D. Cal. Mar. 9, 2011).

In *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 642-43 (N.D. Cal. 2010), the district court denied certification of a class of non-exempt employees, who worked for a restaurant chain and were allegedly forced to purchase uniforms. The employees asserted that the defendant provided them with an insufficient amount of free T-shirt uniforms, and thus, the employees were allegedly required to buy their own uniform without compensation or reimbursements. *Id.* at 634. The restaurant's written policy provided that managers were to provide employees with as many T-shirt uniforms as they needed. *Id.* The employees asserted that the policy was ignored. *Id.* The court in *Washington* determined that class action was not a superior method of resolving the controversy, in addition to finding that common questions of law and fact did not predominate. *Id.* at 642. The court opined that an individualized inquiry into who purchased the T-shirt uniforms and why the purchase was done made class treatment inappropriate. *Id.*

As in *Washington*, 271 F.R.D. at 642-43, class treatment of the instant controversy is inappropriate and not sound. Liability is dependent on the resolution of fact specific inquiries directed at employee-by-employee. The Court will have to delve into the reasons an employee purchased extra uniforms, whether those uniforms were indeed for work or for personal use, and whether the clothes were for the non-exempt employee or for their friends and family members. (*See* Jensen Dep. 146:20-147:8 (seemingly admitting that he used his 100% employees' discount to purchase gifts for family and friends); Dep. of Enrique Madrigal 123:9-13 (admitting he purchased merchandise using an employee discount for attire that the employee did not wear at work). Similarly, the Court will have to inquire into the reasons an employee had to dry clean their uniforms, why they chose to purchase dry clean only clothes, and whether the dry cleaning costs were solely for work-related uniforms. A jury trial will undoubtedly devolve into countless mini-trials on these issues. Thus, a class action will simply be unmanageable. As such, Plaintiffs fail to meet their burden of showing that a class action would be a superior method of resolving this controversy.

Even if Plaintiffs were able to prove company-wide policies of providing an insufficient number of uniforms and of requiring employees to "press" their uniforms, class action is not a superior method of dispute resolution. This is because the Court will likely have to bring in each class member to testify as to which outfit was purchased or dry cleaned. A perfect example is named Plaintiff Jensen. When Jensen was given a list of the "300" Tommy Bahama outfits he purchased and asked if he bought a specific "Aruba zip sweatshirt" because Defendant had failed to provide him with a sufficient number of uniforms, Mr. Jensen answered:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 09-08924 SJO (CWx)</u>  DATE: <u>June 27, 2011</u>

> -- a gift. Because it's the Aruba zip sweatshirt that I don't wear. And my son-in-law or his dad loved those, so I think I bought a number of those for them. The "Marlin around," I think that was - - I think that was a pant. I think that's mine. "That's how I roll," that's a T-shirt. 32 bucks. Cargo's mine. The "Pineapple rumble[,]" that was a gift. The "Bar fore," I'm not sure. The "Key grip" are mine. "Tech tac toe" was mine; that was a camp short. "Key grip short," that was mine. "Linen on the edge," that's a linen short. The "Dot calm," I believe that was a gift. Both dot calms, for my brother. "Linen on the dock side, natural," those are long linen pants; those are mine. "Last call Tango[,]" I think that was a gift.

(Jensen Dep. 145:15-146:4.) This testimony shows that even the representative Plaintiffs do not know which outfit was purchased because of Defendant's alleged misconduct. (*See also* Griffin Dep. 84:1-10 ("I think maybe just a few times I bought a shirt for my father [with the employee discount]. And then I think I bought a couple clothes for a friend of mine.").) "[T]he difficulty of calculating individual damages" raises "serious concerns" for the Court about the manageability of a class action. *See Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1023 (N.D. Cal. 2010); *Six Mexican Workers*, 904 F.2d at 1305 (difficulty of calculating individual damages of 1349 undocumented Mexican workers made class action unfeasible). Under these circumstances, class action is not the superior method of resolving this controversy.

Plaintiffs have failed to meet the prerequisites of Rule 23(a) and both the predominance and superiority requirements of Rule 23(b)(3). Accordingly, Plaintiffs' Motion to Certify the Proposed Hourly Retail and Restaurant Employees Class is DENIED.

    D.    <u>Proposed Subclass of Restaurant Employees</u>

Plaintiffs also seek certification of a Proposed Restaurant Employees Subclass. (*See* Mot. 14:23-15:1.) The putative members of this subclass are "restaurant employees in southern California who [were] allege[dly] . . . deprived of required meal and rest breaks." (*Id.*)

There "is a conflict among courts concerning what it means to 'provide' meal and rest breaks - whether the law requires that employers affirmatively ensure that employees take breaks, or whether it is sufficient for employers to simply make breaks available." *Washington*, 271 F.R.D. at 638. "[T]he legal uncertainty regarding an employer's obligation with respect to meal periods under California law 'has been a recent source of heartburn for courts.'" *Helm*, 2011 WL 855810, at *6 (quoting *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 637-38 (S.D. Cal. 2010)). The California Supreme Court has granted review in two cases bearing on the issue. *See Brinker Rest. Corp. v. Superior Court*, 80 Cal. Rptr. 3d 781 (Cal. 2008) (vacating and granting review in *Brinker Rest. Corp. v. Superior Court*, 80 Cal. Rptr. 3d 781 (Ct. App. 2008)); *Brinkley v. Public Storage Inc.*, 198 P.3d 1087 (Cal. 2009) (vacating and granting review in *Brinkley v. Public Storage, Inc.*, 84 Cal. Rptr. 3d 873 (Ct. App. 2008)). "[E]ven though this question 'is presently before the California Supreme Court . . . , until that decision has issued[,] this Court must

Case 2:09-cv-08924-SJO -CW   Document 131   Filed 06/27/11   Page 12 of 17   Page ID
 #:11882

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   CV 09-08924 SJO (CWx)                    DATE:  June 27, 2011

proceed as best it can." *Helm*, 2011 WL 855810, at *6. The Court notes that "[d]istrict courts in California have uniformly held that the word 'provide' in the Labor Code is properly interpreted as 'making available' rather than 'ensure taken.'" *Lopez v. G.A.T. Airline Ground Support, Inc.*, No. 09-CV-2268, 2010 WL 3633177, at *10 (S.D. Cal. Sept. 13, 2010) (citing cases). "[T]here is no reason to believe the California Supreme Court will reverse [this uniform interpretation] and impose a new obligation upon employers to ensure that employees take designated meal periods." *Id.* at *11. As such, the Court interprets the Labor Code as requiring employers only to make available meal and rest breaks. "Under this standard, a plaintiff must do more than show that a meal break was not taken to establish a violation. Instead, he must show that the employer impeded, discouraged, or prohibited him from taking a proper break." *Washington*, 271 F.R.D. at 641.

   1.   Rule 23(a)

Plaintiffs do not establish that all the prerequisites of Rule 23(a) are met for the putative Restaurant Employees Subclass. Specifically, Plaintiffs cannot meet the typicality and adequacy of representation prerequisites.

First, Plaintiffs' experiences, injuries, and claims are atypical of the proposed subclass. Plaintiffs argue the existence of corporate policies to prevent restaurant employees from taking a meal break during their work shift. Plaintiffs, however, cite to a portion of Defendant's Hospitality Guide and take a redacted portion out of context. (*See id.* at 5:12-15.) Upon a closer review of the Hospitality Guide, it is evident that corporate policies prohibit the eating of Tommy Bahama food at a discount of 50%, not to have a meal break. Defendant's Employee Handbook expressly states that "[e]mployee's [sic] who are non-exempt (hourly) receive a paid 10-minute rest break for each 4 hours worked" and that "[n]on-exempt [e]mployee[s] [may have] meal breaks[,] [which] should generally be scheduled not more than five hours after their start time." (Decl. of Joan Wright in Supp. of Def.'s Opp'n Ex. B.) The handbook also specifies that "[m]eal breaks are generally at least 30 minutes [and] . . . [e]mployees are not paid for meal breaks." (*Id.*) Tellingly, in their Reply, Plaintiffs ignore Defendant's Employee Handbook, putative subclass member declarations, and Defendant's Rule 30(b)(6) witness testimony, all of which support the conclusion that Defendant made meal and rest breaks available to their employees. (*See* Decl. of Christopher Falcone in Supp. of Opp'n ¶ 11 ("I am aware that Tommy Bahama has a written policy of providing employees one 30-minute meal period for every five hours worked. As an employee of Tommy Bahama, I have never been told I could not take a 30-minute uninterrupted meal period when I worked more than five hours.").) The record thus shows that Defendant's corporate policies were to permit employees to take rest and meal breaks.

Without a corporate policy prohibiting meal and rest breaks, Plaintiffs' claim is "based substantially on oral rather than written communications" and Plaintiffs are unable to meet the typicality requirement under Rule 23(a)(3). *See Lanzarone*, 2006 WL 4393465, at *7. Plaintiffs offer putative subclass members' statements that they were "expected to work straight through [their]

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 09-08924 SJO (CWx)          DATE: June 27, 2011

shift[s] because the restaurant would get very busy . . . [which made it] not possible to take meal breaks." (Decl. of Nicole Cody ("Cody Decl.") in Supp. of Pls.' Mot. ¶ 11; Decl. of Casey Cross ("Cross Decl.") in Supp. of Pls.' Mot. ¶ 10; Decl. of Enrique Madrigal ("Madrigal Decl.") in Supp. of Pls.' Mot. ¶ 11.) Some putative subclass members also declare that they were "too intimidated to ask for a meal break for fear of repercussions." (Gutierrez Decl. ¶ 11.) On the other hand, Plaintiffs' other putative subclass members declare that they did take meal and rest breaks, albeit "rarely." (*See* Decl. of Marie Horner in Supp. of Pls.' Mot. ¶ 10; Decl. of Devin King in Supp. of Pls.' Mot. ¶ 10; Madrigal Dep. 146:12-15.) Defendant also submits declarations from proposed subclass members that show they were never told that they could not take a 30-minute meal break or a rest break. (Decl. of Bob Blair in Supp. of Def.'s Opp'n ¶¶ 4, 5; Decl. of Alfredo Bagonghasa in Supp. of Def.'s Opp'n ¶¶ 4, 5; Decl. of Ulices de la Torre in Supp. of Def.'s Opp'n ¶¶ 4, 5; Decl. of Samual Halbers in Supp. of Def.'s Opp'n ¶ 4.)

Thus, Plaintiffs' experiences with regards to meal and rest breaks are not typical of other subclass members. The record shows that the purported oral instructions or intimidation by management and the alleged impossibility of taking a meal break due to the restaurants' business were not experienced by segments of the putative subclass. Plaintiffs, therefore, cannot establish that the action is based on conduct which is not unique to them or that other subclass members have experienced similar injuries by Defendant's same conduct. *See Hanon,* 976 F.2d at 508. They do not carry their burden to satisfy the typicality prerequisite.

Second, Plaintiffs have an irreconcilable conflict of interest with absent subclass members. In *Lanzarone*, 2006 WL 4393465, at *7, the court held that the plaintiff failed to meet the adequate representation prerequisite of Rule 23(a)(4). The court found "that a sizeable segment of the absent class members ha[d] on-duty meal periods and d[id] not want the validity of their agreements challenged." *Id.* The absent class members "understandably [wanted to] . . . work during and be paid for their meal periods than be forced to take off-duty and unpaid meal periods." *Id.* Thus, the plaintiff, who sought to assert a meal period claim on behalf of those class members, had a conflict of interest with the absent class members. *See id.*

Similarly, for the case at hand, absent subclass members voluntarily signed meal waivers because they did not want to take a meal break and forgo both pay and tips. Indeed, several of Plaintiffs' proposed subclass members concede that they "didn't need to take [the] breaks" and "preferred to work and get tips." (Griffin Dep. 134:17-22; *see also* Whaley Dep. 25:17-26:1 ("I'd rather work my whole shift [and not take a break], then go home.").) Thus, Plaintiffs' attempt to certify the Proposed Restaurant Employees Subclass is a challenge to the interests of absent subclass members. This conflict forecloses Plaintiffs' ability to meet the adequacy of representation requirement under Rule 23(a)(4).

Accordingly, Plaintiffs' Motion to Certify the Proposed Restaurant Employees Subclass is DENIED.

| CASE NO.: | CV 09-08924 SJO (CWx) | DATE: | June 27, 2011 |
|---|---|---|---|

    2.    Rule 23(b)(3)

Plaintiffs' Motion to Certify the Proposed Restaurant Employees Subclass also fails because Plaintiffs cannot satisfy Rule 23(b)(3)'s predominance and superiority requirements.

In *Washington*, the defendant restaurant chain did not have a written meal break policy that violated the law. *See Washington*, 271 F.R.D. at 641. The plaintiff, however, claimed that "he was almost never able to take a break while he worked . . . because it was so 'busy' and there was no one to take his place with his customers." *Id.* at 640. The plaintiff also asserted that he "did not miss meal periods by choice and was almost never paid for [his] missed meal breaks." *Id.* at 640-41. The court held that "[i]n the absence of any common policy, an individualized inquiry w[ould] be required to determine whether any single employee failed to take a meal break because he/she was too busy, and also to determine whether a particular employee signed a waiver based on a decision not to take meal breaks." *Id.* at 641. The court explained that "[f]or this reason alone, common issues do not predominate with regard to the meal break claim." *Id.*
The matter at bar mirrors *Washington*, 271 F.R.D. at 641. As aforementioned, no corporate policy to prevent restaurant employees from taking a meal break or rest break during their work shift existed. As in *Washington*, Plaintiffs assert that they were "expected to work straight through [their] shift because the restaurant would get very busy and there was nobody to cover for [them]." (Cody Decl. ¶ 11; Cross Decl. ¶ 10; Madrigal Decl. ¶ 11.) They also allege that they were "too intimidated to ask for a meal break." (Gutierrez Decl. ¶ 11.) These allegations, however, are contradicted by Plaintiffs' other putative subclass members. For example, proposed subclass member Natividad Brown testified in his deposition that people were given rest breaks because "people went and smoked." (Brown Dep. 41:23-42:5.) Brown also stated that "[i]f [he] asked for ten minutes [during slow periods], [he is] sure [Defendant] would give it to [him]." (*Id.*) Another putative subclass member testified that there was no problem or resistence when a server asked for a rest break. (*See* Griffin Dep. 107:2-13.)

Plaintiffs' allegations regarding meal and rest breaks raise serious questions and deserve thoughtful adjudication. The allegations, however, require individualized inquiries, such as: (1) who expressed expectations that the employee could not take a meal or rest break; (2) what was represented to the employee; (3) which restaurant employed the non-exempt worker; (4) when was it busy; (5) was the employee entitled to a meal or rest break; (6) how many other employees were staffed at that time; (7) how many customers were patronizing the restaurant; (8) did the employee sign a waiver voluntarily; (9) did the employee want to work or collect tips rather than take a meal break; and (10) why did other employees not cover the employee? *See Washington*, 271 F.R.D. at 641 ("[N]ot only would individualized analyses have to be performed to determine whether or when employees were eligible for breaks and did not take them, but the analyses into why the breaks were not taken would require the parties to delve into each employee's personal preference, whether a breaker was available, how busy the restaurant was, and whether [the defendant] did or did not pay for the missed break . . . ."). Moreover, Plaintiffs "have not presented any evidence as to how often [D]efendant . . . did not employ enough workers

to address the needs of [restaurant patrons]." *Helm*, 2011 WL 855810, at *6. Nor have Plaintiffs defined the subclass "in a way that might account for staffing and work levels." *Id.* Therefore, individual-by-individual, location-by-location, and hour-by-hour analyses will be required to determine liability. *See id.* These determinations cannot be made through common proof, and thus, a class action will not be the superior method of adjudicating the dispute.

Accordingly, because Plaintiffs are also unable to satisfy Rule 23(b)(3)'s requirements, Plaintiffs' Motion to Certify the Proposed Restaurant Employees Subclass is DENIED. The Court is confident in its determination that individual inquiries would predominate over any common issues of fact and law with regards to Plaintiffs' Proposed Restaurant Employees Subclass because many sister district courts have so similarly held. *See, e.g.*, *Lopez*, 2010 WL 3633177, at *11 ("This is exactly the type of policy and practice for which district courts have routinely denied class-wide treatment."); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646-47 (N.D. Cal. 2008) ("The Court finds that the question of whether defendants failed to provide a class member with a meal break on a particular day is an individual question that can only be resolved with individual trials."); *Salazar v. Avis Budget Grp., Inc.*, 251 F.R.D. 529, 534 (S.D. Cal. 2008) ("[I]ndividual issues predominate. Liability cannot be established without individual trials for each class member to determine why each class member did not clock out for a full 30-minute meal break on any particular day."); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 586 (C.D. Cal. 2008) ("Because [defendant] was required only to make meal breaks and rest breaks available to [p]laintiffs, [p]laintiffs may prevail only if they demonstrate that [defendant]'s policies deprived them of those breaks. Any such showing will require substantial individualized fact finding.").

  E. <u>Proposed Subclass of Individuals who Executed Releases</u>

Lastly, Plaintiffs pray for the certification of a Proposed Release Subclass. (Mot. 1:23-25.) Plaintiffs assert that the executed releases to this action are unenforceable. (*Id.* at 19:5-7.) In a very summary fashion, Plaintiffs argue that they have satisfied the requirements of Rules 23(a) and 23(b)(3). (*Id.* at 19:1-20:8.)

    1. <u>Rule 23(a)</u>

Plaintiffs do not carry their burden in showing that, under Rule 23(a), class certification is appropriate for the Proposed Release Subclass. Plaintiffs cannot meet the typicality and adequacy of representation prerequisites.

Plaintiffs' interest in having the Settlement Agreements held unenforceable precludes them from being typical of the proposed subclass and adequate representatives of absent subclass members. Plaintiffs cannot established that their "interest . . . aligns with the interests of the [sub]class." *See Wolin*, 617 F.3d at 1175. They are also unable to show "[a]n absence of material conflicts of interest" with other subclass members. *See Rodriguez*, 563 F.3d at 959. The named Plaintiffs seek to hold the Settlement Agreements unenforceable because they were allegedly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   CV 09-08924 SJO (CWx)              DATE:  June 27, 2011

"forced to sign [the] waiver."  (Mot. 19:15-16.)  Yet, there is little doubt that large numbers of absent subclass members voluntarily signed the Settlement Agreement because of the benefits that would flow from it.  (*See* Griffin Dep. 155:6-16.)[4]  Even named Plaintiff Percival seemingly concedes in his deposition that he entered the agreement of his own free will, albeit "[w]ith concerns."  (Percival Dep 169:18-20; *see also* Decl. of Michael Shimer ("Shimer Decl.") in Supp. of Def.'s Opp'n ¶ 9 ("[O]n January 23, 2010, Larry Percival stood up and stated to all present that he supported the settlement proposed by Tommy Bahama and said that he was probably going to sign the Settlement Agreement.").)  Plaintiffs' interest in having the Settlement Agreement held unenforceable would, therefore, irreconcilably conflict with those absent subclass members who voluntarily chose to enter into the Settlement Agreement and who seek to enforce it.

Moreover, Plaintiffs are unable to establish that their experiences, injuries, and claims are typical of the proposed subclass.  *See Hanon,* 976 F.2d at 508.  Plaintiffs point to Percival's claim that he felt "pressure[d]" into signing the Settlement Agreement because he "thought [he] had a 48-hour window." (Percival Dep. 163:20-23.)  Percival, however, acknowledged that many employees were signing the Settlement Agreement "[w]ay past the deadline."  (*Id.* at 163:9-11.)  These employees do not have the same injuries or experiences as Percival.  Without any further evidence, Plaintiffs simply do not meet their burden under Rule 23(a).

Accordingly, Plaintiffs' Motion to Certify the Proposed Release Subclass is DENIED.

        2.    Rule 23(b)(3)

In addition, Plaintiffs' Motion to Certify the Release Subclass cannot be granted because Plaintiffs do not satisfy Rule 23(b)(3)'s predominance requirement.  Without pointing to any evidence in the record, Plaintiffs conclude that common issues "clearly predominate over any individual issues here."  (Mot. 19:24-26.)  The Court disagrees.

---

[4]  A transcript of one of Plaintiffs' own putative subclass member reads:
    Defendant's Counsel:  "[Y]ou just chose voluntarily to sign it the day of the meeting by your own free will.  Correct?"
    Putative Subclass Member:  "Correct."
    Defendant's Counsel:  "And you were never pressured or anything to sign the agreement; were you?"
    Putative Subclass Member:  "No."
    Defendant's Counsel:  "You didn't feel coerced to signed [sic] the agreement; did you?"
    Putative Subclass Member:  "No."
(Griffin Dep. 155:6-16.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   CV 09-08924 SJO (CWx)                    DATE:  June 27, 2011

The undisputable terms of the Settlement Agreement could not be any clearer.  It states that "[an employee's] choice of whether or not [to] sign this Agreement will not affect, either way, [the employee's] continued employment with the Company.  There will be no retaliation against [the employee] should [the employee] decide not to enter this Agreement." (Shimer Decl. Ex. C.)  The Settlement Agreement also states in bold, "**I VOLUNTARILY ENTER INTO THIS AGREEMENT OF MY OWN FREE WILL. I HAVE NOT BEEN COERCED, PRESSURED OR THREATENED TO SIGN THIS AGREEMENT**." (*Id.*)  Moreover, the Talking Points document that was read to the employees on January 23, 2010, clearly sets forth that: (1) "[y]our decision to accept this proposal or not to accept it will in no way affect your employment relationship with the Company"; (2) "[i]f you feel you need more time to decide, please contact Heather McGovern in the Human Resource Department . . ."; and (3) "[y]ou are free to speak with an attorney." (*Id.* Ex. A.)  The record shows that putative subclass members like Percival signed the Settlement Agreement.  Despite the unambiguous language of the Settlement Agreement and Talking Points, Percival now argues that he "was forced into [signing]" and "could not seek legal counsel." (Percival Dep. 179:15-25, 181:3-14.)  Therefore, individualized inquiries are needed to determine: (1) why did the employee feel pressured or coerced; (2) was anything said or represented to the employee that contradicts the Settlement Agreement or Talking Points; (3) who pressured and coerced the employee; (4) did the employee call Heather McGovern to ask for more time; (5) why did the employee feel he or she could not obtain an attorney when the employee was told he or she could; and (6) did the employee ask any agents of the Defendant to clarify any concerns he or she had.  These inquiries will invariably differ from employee to employee.  As such, liability cannot be made through common proof and individual inquiries would predominate over any common issues of fact and law.

Accordingly, Plaintiffs cannot meet Rule 23(b)(3)'s predominance requirement and their Motion to Certify the Proposed Release Subclass is DENIED.

III.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification of Proposed Hourly Retail and Restaurant Employees Class, Proposed Restaurant Employees Subclass, and Proposed Release Subclass is **DENIED**.  Plaintiffs' and Defendant's separate Requests for Judicial Notice are **GRANTED**.  Lastly, Defendant's Evidentiary Objections are **DENIED AS MOOT**.  Plaintiffs may continue to prosecute this action in their individual capacity.

IT IS SO ORDERED.